UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER CAMPOS,

      Petitioner,

v.

GREG SKIPPER,

      Respondent.

_____

CASE NO. 1:18-cv-1096

HON. Gordon J. Quist

MAG. Ray Kent

**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF
HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction .................................................................................. 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 3

    A.   Statute of Limitations ................................................. 3

    B.   Exhaustion ................................................................ 3

    C.   Procedural Default ..................................................... 3

    D.   Non-retroactivity Doctrine ......................................... 3

Statement of the Case ................................................................. 4

    A.   Trial Facts ................................................................. 4

    B.   Procedural History ..................................................... 6

Standard of Review Pursuant to AEDPA ............................... 10

Argument .................................................................................. 15

I.   Habeas Claim I, contesting the sufficiency of the evidence, is procedurally defaulted, and the state trial court reasonably rejected this claim on the merits. ..................................... 15

    A.   Campos's claim is procedurally defaulted. ........................... 15

        1.   Campos's claim of ineffective assistance of appellate counsel (Habeas Claim V) does not excuse the procedural default. ................................... 17

        2.   Failure to review this claim would not result in a fundamental miscarriage of justice because Campos does not present any new, reliable evidence of actual innocence. ...................................... 20

    B.   Campos is not entitled to habeas relief even if this Court excuses or otherwise bypasses the procedural default, because there was sufficient evidence of

       penetration to support Campos's convictions for first-
       degree criminal sexual conduct. ............................................... 21

      1.    The state trial court's decision ...................................... 21

      2.    Clearly established federal law regarding
          sufficiency of the evidence ............................................ 24

      3.    Analysis ........................................................................ 26

II.   Habeas Claim II, contending that Campos's waiver of his
    right to testify was not entered knowingly or voluntarily, is
    procedurally defaulted.  Moreover, the state trial court
    reasonably rejected this claim on the merits ................................. 30

   A.    This claim is procedurally defaulted. ..................................... 31

   B.    In any event, this claim is meritless. ...................................... 31

      1.    The state trial court's decision ...................................... 31

      2.    Clearly established federal law regarding waiver
          of the right to testify ..................................................... 32

      3.    Analysis ........................................................................ 33

      4.    Harmless error ............................................................. 36

III.  Habeas Claim III, alleging two instances of prosecutor
    misconduct in closing arguments, is procedurally defaulted
    and, in any event, the state courts reasonably rejected this
    claim on the merits. ........................................................................ 37

   A.    These claims are procedurally defaulted. ............................... 38

   B.    These claims are also meritless. ............................................ 40

      1.    The state courts' decisions ........................................... 40

      2.    Clearly established federal law regarding
          prosecutor misconduct .................................................. 42

      3.    Analysis ........................................................................ 44

IV.    The state courts reasonably rejected Habeas Claim IV,
       alleging various instances of ineffective assistance of trial
       counsel, on the merits. ........................................................... 48

       A.    The state courts' decisions ..................................... 49

       B.    Clearly established federal law regarding ineffective
             assistance of trial counsel ...................................... 53

       C.    Analysis .................................................................. 56

Conclusion ........................................................................................ 59

Relief ................................................................................................ 64

Certificate of Service ....................................................................... 65

# INTRODUCTION

Petitioner, Christopher Campos, sexually assaulted his young niece in multiple ways on multiple occasions.  In particular, he penetrated her genitals with his mouth and penis, and her anus with his penis.  She testified that it hurt when he did these things.

As a result of his Kent County jury-based convictions of two counts of first-degree criminal sexual conduct (person under 13), Mich. Comp. Laws § 750.520b(1)(a), the State now holds Campos in custody in the Michigan Department of Corrections.  Campos is currently serving concurrent sentences of 25 to 50 years' imprisonment for each of his first-degree criminal-sexual-conduct convictions.

Campos commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claims:

I.   Whether there was insufficient evidence to convict of first degree criminal sexual conduct where there was no evidence of penetration.

II.  Whether the court failed to properly ensure that Petitioner knowingly, voluntarily and intelligently waived the right to testify.

III. Whether the prosecutor improperly relied on denigration of defense counsel with remarks about the

1

upsetting nature of the cross-examination of the complainant, and by adding to the complainant's testimony in closing.

IV.   Petitioner was prejudiced by ineffective assistance of counsel.

V.   Whether Petitioner was prejudiced by ineffective assistance of counsel on appeal.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading. To the extent that Campos failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

# STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

## A.    Statute of Limitations

The State is not arguing that any of Campos's habeas claims are barred by the statute of limitations.

## B.    Exhaustion

The State is not arguing that consideration of any of Campos's habeas claims is barred by the failure to exhaust a claim for which a state court remedy exists.

## C.    Procedural Default

The State asserts that Campos has procedurally defaulted Habeas Claims I, II, and III, as more fully discussed below.

## D.    Non-retroactivity Doctrine

The State is not arguing that consideration of any of Campos's claims is barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.    Trial Facts

The prosecutor summarized the trial facts as follows in its brief on

direct appeal in the Michigan Court of Appeals:

> [A] testified that she is in second grade and lives in Saginaw
> with her mom, her brothers Patrick and Sam, and her sister
> Sabrina (Tr II, 63). When asked why she was in court, [A]
> answered, "Because of what Chris did to me" (Tr II, 64). [A]
> identified defendant as her uncle Chris and explained, "what
> he did is every time when my grandma was gone he would
> always take me to my grandma's room or his room and he
> would keep trying to do stuff to me" (Tr II, 64). Specifically,
> "he will try to put his middle part into me and every time I
> try to move he'll just take me back on his bed or on my
> grandma's bed" (Tr II, 64). [A] indicated with her hands
> where defendant would try to put his "middle part" and
> explained those parts of her body were called "no-no spots"
> (Tr II, 65). [A] testified that she uses her "no-no spots" when
> she goes to the bathroom; she goes pee out of one no-no spot
> and poops out of the other (Tr II, 66-67). She also testified
> that her front no-no spot is her "private" and her back no-no
> spot is her "butt" (Tr II, 67). [A] testified that defendant
> touched her in her no-no spots at her grandma's house in
> Grand Rapids when she was visiting her dad, grand-parents,
> and defendant and that she remembers it happening in her
> grandma's room and upstairs in defendant's room (Tr II, 67-
> 68). She explained that other grownups were not at home
> when it happened and gave examples like her grandma
> being somewhere like a store buying things or her dad
> hanging out across the street at her aunt's house (Tr II, 69).
> [A] testified that defendant touches her front no-no spot with
> his hands "but he mostly touches with his tongue" where she
> goes "pee-pee" (Tr II, 69-70).

4

[A] testified that defendant also tries to touch her with his no-no spot where he goes pee-pee from; she pointed to her face and explained that defendant would try to put it in her mouth but she kept moving her head away from him (Tr II, 71-72). [A] testified that defendant tried to put his no-no in her back no-no spot and her front no-no spot (Tr II, 72). When asked if her no-no spots hurt when defendant tried to put his no-no spot in them, [A] answered, "Yes. It hurted right back here and right here when he tried to here. It kind of hurted" (Tr II, 74-75). [A] testified that both her front and back no-no spots had hurt (Tr II, 75). During redirect, the prosecution clarified again that it hurt when defendant tried to put his no-no spot in her front and back no-no spots (Tr II, 98-99). [A] answered, "Yeah, because he was trying to and it went - - he tried to, and he actually got it back and then it hurt" (Tr II, 99). She also testified that defendant wanted her to touch his no-no spot and demonstrated how he wanted her to move her hands back and forth; [A] testified that she tried to pull her hands away but defendant would not let her (Tr II, 72-73). Defendant would have his clothes on when these offenses took place but would take his penis out of his pants (Tr II, 73). Finally, [A] testified that she saw something like slime come out of defendant's no-no spot and the slime was "like white mixed with a little bit of yellow" (Tr II, 74-75).

(2/17/14 People's Br. on Appeal at 1–2.)

The Michigan Court of Appeals also accurately summarized the

facts adduced at trial as follows:

The victim, who was seven years old at the time of trial, alleged that defendant sexually assaulted her at various times during 2010 and 2011 while she was visiting her father at her grandmother's house in Grand Rapids, Michigan.

*People v. Campos*, No. 315683, 2014 WL 3928803, at *1 (Mich. Ct. App. Aug. 12, 2014). This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Campos has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981)).

The State opposes any factual assertions made by Campos that are not directly supported by—or consistent with—the state court record, because Campos has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.   Procedural History

Campos was convicted of two counts of first-degree criminal sexual conduct (person under 13). The trial court sentenced him to concurrent prison terms of 25 to 50 years for each of his convictions.

Following his conviction and sentence, Campos filed a claim of

appeal in the Michigan Court of Appeals, which raised the following

claims:

I. Did Defendant receive ineffective assistance of counsel when trial counsel failed to timely object to, or failed to move for a mistrial after, testimony by the prosecution's expert?

II. Was trial counsel constitutionally ineffective for failing to object to the admission of hearsay statements from the alleged victim through witness Bonnie Skornia?

III. Did errors of prosecutorial misconduct, whether constitutional in nature or not, preserved or unpreserved, deprive Defendant of a fair and impartial trial?

IV. Did Defendant receive ineffective assistance of counsel when counsel failed to request removal of a juror after that juror was seen crying, expressed sympathy for the victim, and manifested an inability to be fair and impartial[?]

V. Did the cumulative effect of the trial errors described above in Arguments I–IV deny Defendant a constitutionally fair trial?

VI. Did Defendant receive ineffective assistance of counsel regarding the plea offer he rejected and should this Court conduct an evidentiary hearing and/or order the prosecution to re-offer the plea agreement?

VII. Is Defendant entitled to resentencing because this Court labored under the mistaken belief that consecutive sentencing was permissible in this case and believed it was sentencing the Defendant less harshly by imposing concurrent sentences; and did the

trial court err in failing to provide substantial and compelling reasons for its upward departure from the mandatory minimum sentence?

While the appeal was pending, the trial court amended its judgment of sentence from 30-to-50 years' imprisonment to 25-to-50 years' imprisonment for each of Campos's convictions, resolving Campos's sentencing claim on appeal.

The Michigan Court of Appeals affirmed Campos's convictions in an unpublished opinion. *Campos*, 2014 WL 3928803, at *6.

Campos subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals, aside from the sentencing claim. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Campos*, 863 N.W.2d 321 (Mich. 2015) (unpublished table decision).

Campos then returned to the trial court and filed a motion for relief from judgment, which raised his present habeas claims. The trial court denied the motion for relief from judgment under Mich. Ct. R. 6.508(D)(3) and on the merits. (12/20/16 Kent Cir. Ct. Order at 1–5.)

8

After the trial court denied the motion for relief from judgment, Campos filed an application for leave to appeal in the Michigan Court of Appeals.  The court denied the application for leave to appeal for failure to establish that the trial court erred in denying the motion for relief from judgment.  (12/21/17 Mich. Ct. App. Order at 1.)

Campos applied for leave to appeal this decision in the Michigan Supreme Court, but was also denied relief under Michigan Court Rule 6.508(D).  *People v. Campos*, 917 N.W.2d 383 (Mich. 2018) (unpublished table decision).

## STANDARD OF REVIEW PURSUANT TO AEDPA

Campos's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  AEDPA prevents a federal court from granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, unless the petitioner can establish that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), the petitioner must establish that "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Metrish v. Lancaster*, 569 U.S. 351, 357 n.2 (2013) (internal quotation marks and citation omitted).

10

Under the "unreasonable application" clause of § 2254(d)(1), the petitioner must establish that, after "identif[ying] the correct governing legal principle from the Supreme Court's decisions, [the state court] unreasonably applie[d] that principle to the facts of [his] case." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alteration omitted). "[T]he state court's decision must have been more than incorrect or erroneous[;]" rather, it must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). "[E]ven clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Again, the state court's determinations of law and fact must be "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Moreover, not just any Supreme Court decision will do under § 2254(d)(1). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per

11

curiam) (internal quotations and citations omitted).  Where no Supreme Court case has confronted "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court."  *Woods v. Donald*, 135 S. Ct. at 1377 (internal quotation marks and citation omitted).  Moreover, the Supreme Court decision must have been on the books at "the time the state court render[ed] its decision."  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).  As the Supreme Court has repeatedly pointed out, "circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court."  *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 135 S. Ct. 429, 430 (2014)) (per curiam).  Likewise, neither do

"state-court decisions, treatises, or law review articles" constitute

clearly established Federal law as determined by the Supreme Court.

*Cuero*, 138 S. Ct. at 8.

And federal court of appeals precedent cannot "refine or sharpen a

general principle of Supreme Court jurisprudence into a specific legal

rule that [the Supreme] Court has not announced." *Marshall v.*

*Rodgers*, 569 U.S. 58, 63 (2013) (per curiam) (citation omitted); *see also*

*Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision

by the Supreme Court addressing "the specific question presented by [a]

case" a federal court cannot reject a state court's assessment of claim).

Under § 2254(d)(2), the "unreasonable determination" subsection,

"a determination of a factual issue made by a State court shall be

presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010). "[A] state-court's

factual determination is not unreasonable merely because the federal

habeas court would have reached a different conclusion in the first

instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation

marks and citation omitted).

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits.").

Finally, Campos's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

## I.   Habeas Claim I, contesting the sufficiency of the evidence, is procedurally defaulted, and the state trial court reasonably rejected this claim on the merits.

Campos first claims that the evidence presented at trial was insufficient to support his convictions for first-degree criminal sexual conduct for sexually penetrating the 7-year-old victim.  But his claim is procedurally defaulted because he raised this claim for the first time in his motion for relief from judgment and failed to demonstrate cause and prejudice for failing to raise it on direct appeal.  Moreover, the state trial court also reasonably rejected this claim on the merits.  Thus, Campos is not entitled to habeas relief on this claim.

### A.   Campos's claim is procedurally defaulted.

To the extent a petitioner deprives the state court of the opportunity to review his claims by failing to follow reasonable state-court procedures, review of the claims is barred.  "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and

independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  Also, a state court does not fail to sufficiently rely on a procedural bar by ruling on the merits in the alternative.  *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1996).

The Sixth Circuit Court of Appeals has held that Mich. Ct. R. 6.508(D)(3) establishes a procedural bar on federal habeas review. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). Moreover, when the Michigan appellate courts issue ambiguous orders citing only Mich. Ct. R. 6.508(D) in affirming the trial court's denial of a motion for relief from judgment, a federal habeas court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the petitioner's] claim."  *Id.*

In this case, Campos failed to comply with the state procedural rule that requires defendants to show good cause and actual prejudice for failing to raise a post-conviction claim on appeal rather than in a motion for relief from judgment.  *See* Mich. Ct. R. 6.508(D)(3).  The last state court to issue a reasoned opinion on his claim was the trial court,

which denied relief because Campos failed to show good cause and actual prejudice for his failure to raise the claim on direct appeal. (12/20/16 Kent Cir. Ct. Order at 3–4.)  This reason for denying relief constitutes a procedural default.  *Guilmette*, 624 F.3d at 291.

### 1.    Campos's claim of ineffective assistance of appellate counsel (Habeas Claim V) does not excuse the procedural default.

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 748–50 (1991); *Sutton v. Carpenter*, 745 F.3d 787, 789–90 (6th Cir. 2014).

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule.  *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690–91 (6th Cir. 2007).  A petitioner must present a substantial reason to excuse the default.  *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *see also Amadeo v. Zant*, 486 U.S. 214, 222–23 (1988) (reviewing a claim that a document was concealed

by officials).  One recognized reason includes attorney error rising to the level of ineffective assistance of counsel.  *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).

Here, Campos alleges ineffective assistance of appellate counsel in Habeas Claim V to excuse his default.  To demonstrate ineffective assistance of appellate counsel, the petitioner must show that counsel performed deficiently and that there is a reasonable probability of a different result on appeal had counsel performed differently.  *Strickland v. Washington*, 466 U.S. 668 (1984).

Appellate counsel performs deficiently if he or she fails "to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Because appellate attorneys "need not (and should not) raise every nonfrivolous claim," petitioners contending that their appellate counsel was ineffective for failing to raise a particular claim will necessarily find it "difficult to demonstrate that counsel was incompetent."  *Id.* at 288.

For prejudice, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That is, a petitioner must show that his appellate attorney was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992) (en banc), *cert. den.*, 508 U.S. 975 (1993); *West v. Seabold*, 73 F.3d 81, 94 (6th Cir. 1996).

Essentially, a petitioner must show that the claim he contends should have been raised on appeal was a "dead-bang winner." *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003), *aff'd*, 104 F. App'x 461 (6th Cir. 2004). "A 'dead-bang winner' is an issue which was obvious from the trial record . . . and one which would have resulted in a reversal on appeal." *Id.* (internal citations and quotation marks omitted). In fact, the Supreme Court has rejected the claim that counsel was ineffective simply because counsel did not take action when "there was nothing to lose by pursuing it." *Knowles v. Mirzayance*, 556 U.S. 111, 121–22 (2009).

19

In this case, appellate counsel provided effective assistance given that Campos's underlying sufficiency claim is meritless.  Appellate counsel cannot be faulted for failing to raise meritless claims on appeal. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014).  Further, as the Supreme Court has recognized, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).  That is precisely what appellate counsel did in this case.

Thus, Habeas Claim V cannot excuse the procedural default.

> **2.    Failure to review this claim would not result in a fundamental miscarriage of justice because Campos does not present any new, reliable evidence of actual innocence.**

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496.  A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new

20

reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To show that his case is the "extraordinary" one warranting application of this exception, Campos must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Campos has not presented any new, reliable evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Campos's claim.

Thus, Habeas Claim I is procedurally defaulted, and habeas relief is barred. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

**B. Campos is not entitled to habeas relief even if this Court excuses or otherwise bypasses the procedural default, because there was sufficient evidence of penetration to support Campos's convictions for first-degree criminal sexual conduct.**

### 1. The state trial court's decision

A state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting

21

review on the merits.  *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir.

2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284–85 (6th Cir. 1989)).

For example, plain error review does not constitute a waiver of

state procedural default rules.  *Wogenstahl v. Mitchell*, 668 F.3d 307,

337 (6th Cir. 2012).  Nor does a State court fail to sufficiently rely upon

a procedural default by otherwise ruling on the merits in the

alternative.  *See Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).

Here, the state trial court also rejected this claim on the merits:

> Defendant claims there was insufficient evidence to convict
> him of first-degree criminal sexual conduct for penile-anal or
> penile-vaginal penetration.  According to defendant, the
> evidence only showed that he "tried" to achieve vaginal and
> anal penetration, but he was unsuccessful.  He claims trial
> and appellate counsel were ineffective for failing to raise
> these arguments regarding sufficiency of the evidence.

> When reviewing a claim of insufficient evidence, the
> evidence must be viewed in a light most favorable to the
> prosecution.  *People v Hardiman*, 466 Mich 417, 421 (2002).
> The question is then "whether a rational trier of fact could
> find the defendant guilty beyond a reasonable doubt."  *Id.*

> Defendant was convicted of two counts of first-degree
> criminal sexual conduct based on "sexual penetration".  *See*
> MCL 750.520b(1).  "Sexual penetration" is specifically
> defined by statute to mean "sexual intercourse, *cunnilingus*,
> fellatio, anal intercourse, or any other intrusion, *however
> slight*, of any part of a person's body or of any object into the
> genital or anal openings of another person's body, but
> emission of semen is not required."  MCL 750.520a(r)
> (emphasis added).

In this case, as an initial matter, defendant does not raise arguments related to Count 2, which was for cunnilingus. It appears defendant is operating under the mistaken belief that Count 1 was for penile-anal penetration and Count 2 was for penile-vaginal penetration. However, as mentioned above, Count 1 was for penile-anal and/or penile-vaginal penetration, while Count 2 was for cunnilingus. [A]'s testimony regarding defendant touching her front no-no spot with his tongue was plainly sufficient to allow a conviction based on cunnilingus in Count 2. *See People v Legg*, 197 Mich App 131 (1992).

As for Count 1, at trial, [A] described defendant trying to put his no-no spot in her front and back no-no spots. She stated that it hurt when he did this, and when asked further about it hurting, she responded, "Yeah, because he was trying to and it went—he tried to, and he actually got it back and then it hurt. And so I hurry up and ran and I went downstairs." Making reasonable inferences from the testimony regarding defendant's actions and [A]'s pain, a rational factfinder could find beyond a reasonable doubt that penetration of genital or anal openings, *however slight*, occurred. *See also People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued Sept. 22, 2011 (Docket No. 298183) (finding testimony adequate to establish penetration when the victim "indicated that defendant was attempting to put his penis in her vagina, but it was not going in '[a]nd that hurt'").

Accordingly, there is sufficient evidence supporting the convictions on both counts. Trial counsel was not ineffective for failing to raise issues related to sufficiency of the evidence because such efforts would have been futile. *See People v Ericksen*, 288 Mich App 192, 201 (2010).

(12/20/16 Kent Cir. Ct. Order at 3–4.)

### 2. Clearly established federal law regarding sufficiency of the evidence

Due process requires that the prosecutor present sufficient evidence to convince any reasonable juror that the petitioner is guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 319, 324 n.16. Due to the great deference afforded to the trier of fact under this standard, "a defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v.*

*Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (internal citation and quotation marks omitted).

The scope of sufficiency claims on habeas review is limited. *Cavazos v. Smith*, 565 U.S. 1 (2011) (per curiam).  In that case, the Court stated that *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 2.  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if *no* rational trier of fact could have agreed with the jury." *Id.* (emphasis added).  A federal court sitting in habeas "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court;" rather, the court "may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett,* 559 U.S. 766, 773 (2010)).

The Supreme Court also emphasized that the *Jackson* standard is broad: "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Cavazos*, 565 U.S. at 2.  Indeed, the Sixth Circuit

Court of Appeals has noted that the *Jackson* standard is "exceedingly general." *Davis*, 658 F.3d at 535. And "the more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations." *Lett*, 559 U.S. at 776 (internal citations and quotations marks omitted).

In addition, sufficiency claims are entitled to double deference on habeas review. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) ("In light of this twice-deferential standard, it is abundantly clear that the [state court's] rejection of Matthews' sufficiency claim is controlling in this federal habeas proceeding."); *accord Cavazos*, 565 U.S. at 7 ("When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review . . . there can be no doubt of the Ninth Circuit's error below.").

### 3.    Analysis

Campos seems to think direct testimony from a 7-year-old girl regarding penetration was required to support his convictions, precluding any reasonable inferences from her testimony that Campos "tried" to sexually penetrate her, which in turn caused her pain. But

the law is not so ignorant.  Prosecutors may argue not only the evidence in the record, but any reasonable inferences from that evidence.  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005) ("[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence.").

Campos argues that penetration cannot be reasonably inferred from the victim's testimony.  But the true unreasonableness lies in expecting a 7-year-old child to describe the minutia of human anatomy to establish penetration.  The young girl likely did not know, or at least may not have been able to articulate, the differences between the labia majora, labia minora, and vagina, or the depth of penetration of her vagina or anus.  All she knew is that Campos attempted to insert his penis into her genital and anal openings, that this caused her pain, that he used his mouth on her genitals, and that white slime came out of his penis at least once.  (2/19/13 Trial Tr. at 69–75, 99.)  In short, she testified about what happened to the best of her ability.

It was eminently reasonable for the prosecutor to argue—and the jury to determine—that the pain resulted from whatever minimal penetration Campos was able to accomplish.  The pain was likely

27

caused by stretching of the genital and anal openings with Campos's "no-no spot," i.e., penis.  Michigan law is also clear that cunnilingus constitutes penetration.  MCL 750.520a(r); *People v. Legg*, 494 N.W.2d 797, 798 (Mich. Ct. App. 1992) ("An act of cunnilingus, by definition, involves an act of sexual penetration.").

While Campos argues that that inference is not reasonable, and even that expert testimony on that point was required, he is again mistaken.  The jury of adult men and women were perfectly capable of using their common sense and experiences to reasonably infer what caused the victim's pain after Campos "tried" to put his no-no spot in the victim's no-no spots: penetration, however slight.

Situations like this are precisely why Michigan law broadly defines penetration.  Under MCL 750.520a(r), "sexual penetration" includes "*any* . . . intrusion, *however slight*, of *any* part of a person's body or of *any* object into the genital or anal *openings* of another person's body . . . ."  (Emphasis added.)  Indeed, the Michigan Legislature used the term "genital opening," rather than "vagina," broadening the definition of penetration to include any intrusion "beyond the body surface," including penetration of the labia:

> One object of the Legislature in providing for degrees of criminal sexual conduct was to differentiate between sexual acts which affected only the body surfaces of the victim and those which involved intrusion into the body cavities, in the instant case the female "genital opening". In view of the fact that the penetration of the labia majora is beyond the body surface, a definition of the female genital opening that excluded the labia would be inconsistent with the ordinary meaning of female genital openings. The fact that the Legislature used "genital opening" rather than "vagina" indicates an intent to include the labia. Such a definition is also consistent with that in most other jurisdictions. See 76 A.L.R.3d 163, § 3, p 178.

*People v. Bristol*, 320 N.W.2d 229, 230 (Mich. Ct. App. 1981).  Thus, the evidence in this case was sufficient to establish penetration under Michigan law.

Indeed, even though Campos did not raise sufficiency of the evidence on direct appeal, the Michigan Court of Appeals indicated that the evidence was sufficient based on the victim's testimony alone:

> The victim's testimony alone was sufficient to establish the CSC conviction involving cunnilingus, *People v. Harris,* 158 Mich.App 463, 470; 404 NW2d 779 (1987), as well the CSC conviction involving sexual penetration, MCL 750.520a(r). *People v. Lemmon,* 456 Mich. 625, 642 n 22; 576 NW2d 129 (1998). Thus, because there is sufficient evidence to support defendant's convictions on the basis of the victim's testimony alone, we conclude that the items we hold to be error are not so seriously prejudicial that the cumulative effect denied defendant a fair trial.

*Campos*, 2014 WL 3928803, at *5.

29

In sum, Campos's claim is baseless.  Not only has he failed to prove that the evidence was insufficient, but he has further failed to meet his much higher burden of showing that the state trial court's determination that the evidence was *not* insufficient was objectively unreasonable.  *Parker*, 567 U.S. at 43.  Accordingly, Campos is not entitled to habeas relief on this claim.

## II. Habeas Claim II, contending that Campos's waiver of his right to testify was not entered knowingly or voluntarily, is procedurally defaulted.  Moreover, the state trial court reasonably rejected this claim on the merits.

Campos argues in Habeas Claim II that his on-record waiver of his right to testify was not entered knowingly or voluntarily because the trial court failed to engage him in a colloquy on the matter.  But his claim is procedurally defaulted and cannot entitle him to relief.  Further, the state trial court also reasonably rejected this claim on the merits.  Any error was harmless as well.  Thus, Campos is not entitled to habeas relief on this claim.

## A.    This claim is procedurally defaulted.

For the same reasons as those stated in Argument I(A), this claim is inexcusably procedurally defaulted and therefore cannot entitle Campos to federal habeas relief.

## B.    In any event, this claim is meritless.

### 1.    The state trial court's decision

The state trial court also rejected this claim on the merits:

> Defendant next argues that the Court failed to ensure that he knowingly, voluntarily, and intelligently waived his right to testify. However, "there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify." *People v Harris,* 190 Mich App 652, 661 (1991). Michigan trial courts have no duty to advise defendants of that right or to determine whether a knowing and intelligent waiver of that right was made. *Id.* at 661-662. Furthermore, despite the lack of any requirement of a record of waiver, the record in this case includes statements from trial counsel and defendant confirming that it was defendant's choice not to testify and that choice was made as a part of trial strategy.

> Respectfully, defendant's arguments related to waiver of his right to testify lack merit and do not provide any basis for relief.

(12/20/16 Kent Cir. Ct. Order at 4.)

### 2. Clearly established federal law regarding waiver of the right to testify

A criminal defendant has a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). But that right is subject to a knowing and intelligent waiver. *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000). And "[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Id.* at 551. Thus, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Id.*

"A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." *Id.* "At base, a defendant must 'alert the trial court' that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.* "When a defendant does not alert the trial court of a

disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id.* An affirmative waiver on the record is not required. *Id.* at 551–52.

### 3.    Analysis

In this case, Campos validly and plainly waived his right to testify on the record:

| | |
|---|---|
| Mr. Nunzio: | Your Honor – and I'm just putting this on the record right now.  It was my client's decision not to testify today.  I just wanted to – isn't that correct, Christopher? |
| The Defendant: | Yes. |
| The Court: | What was your answer, sir? |
| The Defendant: | Yes. |
| The Court: | All right, thank you. |
| Mr. Nunzio: | So, I just want to put that on the record.  It's part of the strategy in this case. |

(2/20/13 Trial Tr. at 151–52.)  The record shows Campos's decision came with the advice of counsel and Campos did not express any confusion or disagreement, nor did he correct his counsel or otherwise insist on testifying.  Nothing more was required for a waiver. *Webber*, 208 F.3d

at 550–52.  Indeed, a valid waiver would have been presumed even if Campos had simply stayed silent.  *Id.*

Campos argues that an on-record colloquy was necessary to establish a voluntary and knowing waiver, but federal law belies his claim.  *Id.*  First, Campos fails to cite any specific Supreme Court cases holding that the lack of a colloquy preceding a defendant's on-record waiver of his right to testify constitutes reversible error.  *See Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.")  Indeed, even "similar" cases are not enough.  *Id.* ("[T]he Sixth Circuit framed the issue at too high a level of generality.").  This alone is fatal to Campos's claim.

In addition, federal law makes clear that such a colloquy is not required.  *Webber* rejected this very argument, noting that "a *sua sponte* inquiry from the trial judge regarding the defendant's choice to testify might impede on an appropriate defense strategy, might lead the defendant to believe that defense counsel has been insufficient, or might inappropriately influence the defendant to waive the Fifth Amendment

34

right *not* to testify."  208 F.3d at 552.  *Webber* remains good law, including in habeas cases.  *See Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010).

The Michigan courts apply the same principles regarding waiver of the right to testify.  *See People v. Harris*, 476 N.W.2d 767, 772 (Mich. Ct. App. 1991).  Campos claims *Harris* is no longer good law after *Iowa v. Tovar*, 541 U.S. 77 (2004), but Westlaw does not mark *Harris* with a red flag, let alone a yellow flag, and the Michigan courts continue to cite and apply *Harris* for the proposition that an explicit waiver of the right to testify is not required.  *See People v. Coyle*, No. 339505, 2018 WL 5304932, at *1 (Mich. Ct. App. Oct. 25, 2018) ("Defendant acknowledges *Harris* but requests that we overrule it. However, *Harris* is binding precedent, and even if we were inclined to agree with defendant (and we are not), we could not overrule it. MCR 7.215(J)(1).").  And, in any event, habeas relief may not be premised on state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991).

In sum, Campos's claim must fail where he waived his right to testify on the record, there was no deficiency in that waiver, and he

otherwise failed to express any desire to testify against his counsel's advice.  Thus, Campos is not entitled to habeas relief on this claim.

### 4. Harmless error

A habeas petitioner is not entitled to relief based on State trial-court error unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015).  This is so even where the state appellate court did not recognize the error and review the claim for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).

A showing of "substantial and injurious effect or influence" means "actual prejudice."  *Gover v. Perry*, 698 F.3d 295, 299 (6th Cir. 2012) (citing *Brecht*, 507 U.S. at 637).  *See also Davis v. Ayala*, 135 S. Ct. 2187, 2197–98 (2015).  This means that the habeas court is left in "grave doubt" over a matter so "evenly balanced" that the court concludes it is in a "virtual equipoise" as to the harmlessness of the error.  *Davis*, 135 S. Ct. at 2211 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

Here, any error was harmless because Campos's self-serving testimony would not have made any difference.  *See White v. Steele*, 629 F. App'x 690, 698–99 (6th Cir. 2015) ("Given the evidence presented at trial, there is no reasonable possibility that the omission of Petitioner's testimony as presented on collateral review had a substantial and injurious effect or influence on the jury's verdict.").  Indeed, Campos would have put himself in a rather poor position if he had testified that he had only "tried" to penetrate the 7-year-old victim but was not successful.  And any testimony completely denying an assault whatsoever likely would not have carried much weight given that Campos himself was the defendant.  It was a far better strategy for Campos to remain silent, allowing defense counsel to argue, as he did, that the victim's testimony lacked sufficient detail for a conviction.

Thus, Campos is not entitled to habeas relief on this claim.

III.   **Habeas Claim III, alleging two instances of prosecutor misconduct in closing arguments, is procedurally defaulted and, in any event, the state courts reasonably rejected this claim on the merits.**

In Habeas Claim III, Campos contends that the prosecutor twice erred in closing arguments by denigrating defense counsel and adding

to the victim's testimony in arguing inferences from the evidence. But both claims are inexcusably procedurally defaulted, barring habeas relief. Moreover, the Michigan Court of Appeals and the state trial court reasonably rejected these claims on the merits, and any errors were harmless. Thus, Campos is not entitled to habeas relief on these claims.

### A.    These claims are procedurally defaulted.

Campos raises two prosecutor-misconduct claims: (1) that the prosecutor denigrated defense counsel in closing argument and (2) that the prosecutor added to the victim's testimony in closing in arguing that penetration occurred. The first claim was unquestionably raised and addressed on direct appeal in the Michigan Court of Appeals, where the court reviewed the claim for plain error. *Campos*, 2014 WL 3928803, at *4–5. Campos raised the second claim in his motion for relief from judgment, where the state trial court rejected it both under Mich. Ct. R. 6.508(D)(3) and on the merits.

Given that the state courts applied plain-error review to the first claim and Mich. Ct. R. 6.508(D)(3) to the second claim, both claims are

38

procedurally defaulted. As established in Argument I(A), Mich. Ct. R. 6.508(D)(3) constitutes a procedural bar. *Guilmette*, 624 F.3d at 291.

A state court's review for plain error also constitutes a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 336-37 (6th Cir. 2012). Plain-error review enforces "procedural default on an independent and adequate state ground." *Id.* at 337; *accord Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("[P]lain error analysis does not save a petitioner from procedural default."). Michigan appellate courts apply plain-error review when an issue, including a constitutional one, is unpreserved, typically a result of failing to contemporaneously object at trial. *Taylor v. McKee*, 649 F.3d 446, 450–51 (6th Cir. 2011); *see also People v. Carines*, 597 N.W.2d 130, 761–64 (Mich. 1999). The contemporaneous-objection rule is firmly established and regularly followed in the Michigan courts and the rule serves as an adequate and independent state ground. *Id.*

Thus, both of Campos's prosecutor-misconduct claims are procedurally defaulted.

Campos asserts ineffective assistance of trial counsel to excuse the first default and ineffective assistance of appellate counsel to excuse the

second default.  But neither claim supports a finding of cause and prejudice because both prosecutor-misconduct claims are meritless. Neither trial nor appellate counsel can be faulted for failing to raise meritless claims.  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014).

Further, Campos cannot demonstrate prejudice from either claim. Because both claims concerned closing arguments, the remedy stemming from objections from trial counsel would have been an admonishment from the trial court for the jury to disregard the prosecutor's comments, as well as reinforcement of the instruction that the arguments of counsel are not evidence.  Thus, neither default from the prosecutor-misconduct claims can be excused.

And, finally, Campos fails to present any new, reliable evidence of actual innocence such that failure to review his prosecutor-misconduct claims would result in a fundamental miscarriage of justice.

Accordingly, review of Habeas Claim III is procedurally barred.

**B.      These claims are also meritless.**

### 1.      The state courts' decisions

The Michigan Court of Appeals rejected Campos's manipulation claim on the merits:

The prosecutor's argument that defense counsel manipulated the victim's testimony during cross-examination, and would have manipulated the victim's younger brother had he testified, exceeded the bounds of proper argument because it suggested that defense counsel was intentionally attempting to mislead the jury, *Unger,* 278 Mich.App at 236, by focusing on defense counsel's cross-examination technique as related to the victim, rather than the actual evidence presented at trial. Further, the argument also impermissibly shifted the focus from the evidence to defense counsel's personality and tactics. *Wise,* 134 Mich.App at 101–102. However, while the prosecutor's comments exceeded the bounds of proper argument, reversal of this unpreserved issue is not required because defense counsel did not object and a curative instruction could have alleviated any prejudicial effect of the prosecutor's improper comments. *Unger,* 278 Mich.App at 236. In addition, the jury was instructed after closing arguments that the lawyers' statements and arguments were not evidence and were only meant to help the jury understand the evidence and each side's legal theories. Moreover, we note that defense counsel addressed the prosecutor's arguments in his closing argument and attempted to turn them to his advantage. A defendant is not allowed to assign error on appeal to something his own counsel deemed proper at trial. *People v. Green,* 228 Mich.App 684, 691; 580 NW2d 444 (1998).

*Campos*, 2014 WL 3928803, at *5.

The state trial court also rejected Campos's claim that the prosecutor added to the victim's testimony during closing:

Defendant also suggests that the prosecutor improperly expanded [A]'s testimony by claiming during closing arguments that there was sexual penetration. However, as explained above, reasonable inferences from [A]'s testimony allow the conclusion that there was penetration sufficient to

41

meet the definition under Michigan law.  The prosecutor's arguments were proper and, in any event, the jury was instructed that the statements of the attorneys are not evidence.

(12/20/16 Kent Cir. Ct. Order at 5.)

### 2.  Clearly established federal law regarding prosecutor misconduct

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial error claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, 567 U.S. 37, 45 (2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The standard enunciated in *Darden* constitutes a general rule, which entitles the state court to "more leeway" in reaching its determination. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins,* 209 F.3d 486, 529 (6th Cir. 2000).  This court does "not

possess supervisory powers over state court trials." *Id.* "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.* "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.'" *Id.* (quoting *Darden*, 477 U.S. at 181); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) ("'[T]he appropriate standard of review for ... a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.'") (quoting *Darden*, 477 U.S. at 181).

A reviewing habeas court must ask whether the state court's decision denying the petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155, (quoting *Harrington*, 131 S. Ct. at 786-87. "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial." *Byrd*, 209 F.3d at 529-30 (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'"

43

*Pritchett,* 117 F.3d at 964 (quoting *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (quoting *Donnelly*, 416 U.S. at 645).

### 3. Analysis

Even though these claims are procedurally defaulted, the Michigan Court of Appeals' ruling that Campos has not established plain error is entitled to AEDPA deference. Federal constitutional claims reviewed for plain error by a state court *are* claims adjudicated on the merits and are entitled to review under AEDPA standards. *See Stewart v Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017); *see also Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009). Similarly, the state trial court's rejection of this claim on the merits despite the procedural default also constitutes a merits adjudication entitled to AEDPA deference.

Turning to the first claim regarding the prosecutor's comments about defense counsel's cross-examination of the victim, the Michigan Court of Appeals concluded that the prosecutor did err, but not reversibly so because there was no prejudice.  But that determination is not binding on this Court.  *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007) (a state court's resolution of an issue in the Petitioner's favor is not entitled to deference under AEDPA because the standard of review is a precondition to the grant of habeas relief . . . not an entitlement to it).  *See also Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990) (Federal courts considering petitions for writs of habeas corpus are not "bound by a state appellate court's ruling in petitioner's favor on a matter of constitutional law.").

The State maintains that the prosecutor did not err at all.  The prosecutor argued that the victim was "manipulated and misled" on cross-examination and then used the forensic-interviewing protocol to demonstrate why that type of questioning led to misleading answers, noting that leading questions with young children can lead to unreliable or at least unclear answers.  (2/21/13 Trial Tr. at 13.)  This was not improper.

45

Indeed, even in the seminal prosecutor-misconduct case of *Darden v. Wainwright*, the Supreme Court held that the prosecutor did not err in the closing argument where the prosecutor referred to the defendant as an "animal," who "shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash." *Darden*, 477 U.S. at 180 n.12. The prosecutor further said, "I wish that I could see him sitting here with no face, blown away by a shotgun." *Id.* Even with that graphic imagery, the Supreme Court "agree[d] with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial." *Id.* at 181. The Court emphasized that the prosecutor did not manipulate or misstate the evidence. *Id.* at 182. Here, the same is true because the prosecutor did not manipulate or misstate the evidence.

Further, with respect to Campos's second claim that the prosecutor added to the victim's testimony in closing, the state trial court concluded that the prosecutor did not err because she argued reasonable inferences from the evidence. The State has already extensively discussed the reasonableness of those inferences in Argument I(B)(3) as part of Campos's sufficiency-of-the-evidence claim

and rely on those arguments herein. Again, "prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates*, 402 F.3d at 646. That is precisely what the prosecutor did in this case.

Finally, even if the prosecutor did err in either claim, any such errors were harmless. Indeed, the Michigan Court of Appeals concluded as much regarding the first claim. *Campos*, 2014 WL 3928803, at *5. A habeas petitioner is not entitled to relief based on State trial-court error unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015). If a state court makes a harmlessness determination, that decision is entitled to AEDPA deference, as is the case here. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). And even if there is no state-court determination of harmlessness, *Brecht* still applies. *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).

In this case, any error was harmless because a curative instruction could have easily remedied both errors in the moment, and the jury was instructed that the attorneys' arguments were not

47

evidence.  (2/21/13 Trial Tr. at 60.)  Jury instructions can nullify improper comments by a prosecutor.  *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002).  Jurors are presumed to follow their instructions. *Kansas v. Carr*, 136 S. Ct. 633, 645 (2016).  Further, defense counsel responded to the prosecutor's arguments in his own closing argument, which also diffused any error from the prosecutor.  (2/21/13 Trial Tr. at 23–27.)

Accordingly, Campos is not entitled to habeas relief on Habeas Claim III.

## IV.   The state courts reasonably rejected Habeas Claim IV, alleging various instances of ineffective assistance of trial counsel, on the merits.

As best the State can tell, Campos raises five instances of ineffective assistance of trial counsel in Habeas Claim IV: (1) counsel should have moved to quash the felony information; (2) counsel should have moved for a directed verdict; (3) counsel failed to object to the prosecutor misconduct alleged in Habeas Claim III; (4) counsel failed to object to Bonnie Skornia's testimony at trial; and (5) counsel failed to strike a crying juror.  But the state courts reasonably rejected these claims on the merits, barring habeas relief.

### A.    The state courts' decisions

The state trial court rejected Campos's first two ineffective-

assistance claims on the merits after concluding that the evidence

presented at trial sufficiently supported Campos's convictions:

> Accordingly, there is sufficient evidence supporting the
> convictions on both counts.  Trial counsel was not ineffective
> for failing to raise issues related to sufficiency of the
> evidence because such efforts would have been futile.  *See
> People v Ericksen*, 288 Mich App 192, 201 (2010).

(12/20/16 Kent Cir. Ct. Order at 4.)

The Michigan Court of Appeal also rejected Campos's fourth and

fifth ineffective-assistance claims on the merits:

> Defendant first claims that he was denied effective
> assistance when defense counsel failed to immediately object
> to expert witness Bonnie Skornia's testimony on redirect
> examination that the victim's statements during the medical
> examination were a "bit much" to have been instilled in the
> victim. Defendant argues that Skornia's testimony
> improperly vouched for the victim's testimony and counsel
> should have objected.
>
> In a criminal sexual conduct case, an expert testifying
> regarding behaviors common in other abuse victims (1) may
> not testify that the sexual abuse occurred, (2) may not vouch
> for the veracity of a victim, and (3) may not testify whether
> the defendant is guilty. *People v. Peterson,*450 Mich. 349,
> 352; 537 NW2d 857 (1995), amended 450 Mich. 1212 (1995).
> However, "(1) an expert may testify in the prosecution's case
> in chief regarding typical and relevant symptoms of child
> sexual abuse for the sole purpose of explaining a victim's
> specific behavior that might be incorrectly construed by the

jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id* . at 352–353.

Skornia improperly vouched for the truthfulness of the victim when she testified that the victim's statements, that defendant tried to put "it" in her "front no-no," but it hurt and defendant could not do it, were "a bit much" for the statements to have been instilled by her mother. *Id.* at 352. We agree that trial counsel should have immediately objected, *id.,* but we conclude that reversal is not required because defendant is unable to prove that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland,* 466 U.S. 687–688, 694; *Trakhtenberg,* 493 Mich. at 51. Defense counsel objected after the prosecutor's immediate follow-up question. At that time, the trial court gave a curative instruction, making it clear that the jury was the trier of fact, not Skornia. Following the close of evidence, the trial court also instructed the jury that it was the finder of fact and that it was the jury's job to decide which witnesses to believe. In addition, the jury was instructed that it did not have to believe an expert's opinion. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham,* 256 Mich.App 265, 279; 662 NW2d 836 (2003). Thus, defendant is unable to prove that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland,* 466 U.S. 687–688, 694; *Trakhtenberg,* 493 Mich. at 51.

We further conclude that defense counsel was not ineffective for failing to request a mistrial after Skornia's improper comment. Skornia's testimony was cured through jury instructions and Skornia was not allowed to answer the prosecutor's clarifying question following defense counsel's objection; thus, the alleged error was not so egregious that

any prejudice could not be cured. *People v. Gonzales,* 193 Mich.App 263, 266; 483 NW2d 458 (1992). Thus, a mistrial would not have been granted, and defense counsel is not required to argue a meritless motion for mistrial, *People v. Ericksen,* 288 Mich.App 192, 201; 793 NW2d 120 (2010), and any failure to move for a mistrial was cured by the trial court's instruction to the jury that it was the finder of fact, not Skornia, *Abraham,* 256 Mich.App at 279.

*     *     *

Defendant also asserts he was denied effective assistance when defense counsel did not request the removal of juror B, who cried after the jury was chosen. This argument is without merit.

"[A]n attorney's decisions relating to the selection of jurors generally involves matters of trial strategy, which [courts] normally decline to evaluate with the benefit of hindsight." *People v. Johnson,* 245 Mich.App 243, 259; 631 NW2d 1 (2001) (citations omitted). It is presumed that jurors are competent and impartial and the party alleging the disqualification bears the burden of proving its existence. *People v. Collins,* 166 Mich. 4, 9; 131 NW 78 (1911); *People v. Walker,* 162 Mich.App 60, 63; 412 NW2d 244 (1987). This Court has previously noted:

> Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, "we cannot see the jurors or listen to their answers to voir dire questions." For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror. [*People v. Unger,* 278 Mich.App 210, 258; 749 NW2d 272 (2008) (citations omitted).]

51

Defendant was not denied the effective of assistance of
counsel related to juror B. The trial court thoroughly
questioned juror B about her emotions after she was seen
crying in the courtroom shortly after the jury was chosen.
The juror indicated her concern for the victim having to
testify, regardless of whether the allegations were true or
not. The juror also indicated that she did not believe sexual
abuse occurred simply because it was reported and indicated
that she could be fair and impartial. *Johnson,* 245 Mich.App
at 259. Moreover, we will not review defense counsel's
decision to not challenge juror B with the benefit of
hindsight because it was a strategic decision. *Id.* at 259. The
trial court was able to view juror B's facial expressions, body
language, and manner when answering questions, *Unger,*
278 Mich.App at 258, and the trial court did not clearly err
by impliedly finding that juror B's statement that she could
be fair and impartial was believable, *Johnson,* 293 Mich.App
at 90. Moreover, the record does not disclose any further
issues with the juror during the proceedings. Thus, defense
counsel's performance did not fall below an objective
standard of reasonableness under prevailing professional
norms and there is no evidence that but for juror B's
inclusion on the jury, the outcome of the trial would have
been different.

*Campos*, 2014 WL 3928803, at *1–3.

While the state courts do not seem to have addressed Campos's

third ineffective-assistance claim directly, the Michigan Court of

Appeals did note that defense counsel argued against the prosecutor's

alleged misconduct in closing argument, rather than objecting to it:

Moreover, we note that defense counsel addressed the
prosecutor's arguments in his closing argument and
attempted to turn them to his advantage. A defendant is not
allowed to assign error on appeal to something his own

counsel deemed proper at trial. *People v. Green,* 228
Mich.App 684, 691; 580 NW2d 444 (1998).

*Campos*, 2014 WL 3928803, at *5.

### B.   Clearly established federal law regarding ineffective assistance of trial counsel

To establish ineffective assistance of counsel, a petitioner must

demonstrate that counsel's performance was objectively unreasonable

and that he was prejudiced by counsel's action or inaction.  *Strickland*

*v. Washington*, 466 U.S. 668, 688, 692 (1984).  Both prongs must be

satisfied to establish ineffective assistance; if a petitioner cannot satisfy

one prong, the other need not be considered.  *Id.* at 697.

With respect to performance, "[j]udicial scrutiny of counsel's

performance must be highly deferential . . . [b]ecause of the difficulties

inherent in making the evaluation, a court must indulge a strong

presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Yet

the reviewing court is required not simply to give the attorney the

benefit of the doubt, but to affirmatively entertain the range of possible

reasons counsel may have had for proceeding as he did.  *Cullen v.*

*Pinholster*, 563 U.S. 170, 196 (2011).  "[R]eliance on 'the harsh light of

hindsight' to cast doubt on a trial that took place" years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 562 U.S. 86, 89 (2011). In addition, the *Strickland* standard "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id.* at 110.

The prejudice prong requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Richter*, 562 U.S. at 112). Reviewing courts must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have

---

[1] "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)] harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

been affected by errors than one with overwhelming record support." *Id.* at 696.

But on habeas review, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002); *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007). The question on habeas review "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *accord Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").

Ineffective-assistance claims adjudicated on the merits in the state court are entitled to double deference on habeas review. The Supreme Court has stressed that the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . ." *Richter,* 562 U.S. at 105 (internal citations and quotation marks omitted). Accordingly, the Supreme

Court has indicated that "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.*

And because the *Strickland* standard is general, "a State court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 120. "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## C.    Analysis

The state courts' resolutions of these claims were objectively reasonable. Given the sufficiency of the evidence, counsel could not have deficiently performed, nor could Campos have suffered any prejudice, in choosing not to file motions to quash the felony information or for a directed verdict. Indeed, counsel likely recognized that both motions would have been futile. Counsel cannot be faulted for failing to advocate a meritless position or raise a futile objection. *Coley*, 706 F.3d at 752.

The State also need not repeat the thorough analyses the Michigan Court of Appeals conducted with respect to Campos's claims

regarding Skornia or the juror.  In fact, counsel *did* object to Skornia's testimony when the prosecutor asked a follow-up question after Skornia's "bit much" testimony and the trial court instructed the jury that they were the ultimate triers of fact in the case.  (2/19/13 Trial Tr. at 144–46.)  Thus, counsel performed as required and Campos did not suffer any prejudice.

Moreover, as the Michigan Court of Appeals concluded, defense counsel was the person in the best position to determine whether the juror should be excused.  "Counsel's actions during *voir dire* are presumed to be matters of trial strategy."  *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001).  Following an inquiry from the court, defense counsel agreed with the trial court's handling of the situation and deemed the juror suitable for service.  (2/19/13 Trial Tr. at 4–7.) Counsel did not provide ineffective assistance in this regard.

Finally, with respect to counsel's lack of objection to the prosecutor's closing argument, counsel's decision was strategic given that he instead chose to argue against the prosecutor's points in his own closing argument.  (2/21/13 Trial Tr. at 23–27.)  And, again, no prejudice ensued given the trial court's instruction to the jury that the

attorneys' arguments were not evidence, nullifying any errors from the prosecutor's closing.  (*Id.* at 60.)

Finally, above all else, it would not be enough for Campos to establish both *Strickland* prongs to show ineffective assistance of counsel.  Rather, on habeas review where each claim was adjudicated on the merits, Campos must show that the state courts' determinations that counsel was *not* ineffective were unreasonable—a substantially higher threshold.  *Knowles*, 556 U.S. at 123.  He fails to meet that high burden.

Thus, Campos is not entitled to habeas relief on Habeas Claim IV.

## CONCLUSION

Campos procedurally defaulted Habeas Claims I, II, and III. He has not shown cause and prejudice to excuse the default. In addition, he has not shown failure to review the claims would result in a fundamental miscarriage of justice. Accordingly, as detailed above, habeas review of Habeas Claims I, II, and III should be barred.

In any event, the state courts' rejection of Campos's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Campos was "entitled to a fair trial but not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *see also United States v. Hasting*, 461 U.S. 499, 508–09 (1983) ("[T]here can be no such thing as an error-free, perfect trial" and the Constitution "does not guarantee such a trial.") The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision.

*Yarborough*, 541 U.S. at 664.  Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Campos is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter.  *See Brecht*, 507 U.S. at 622.

The State also contends that Campos has not demonstrated entitlement to discovery.  Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery."  *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).  Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause."  R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' "

*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Campos has not met this burden.

If this Court denies the petition, the State asserts that Campos is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling

standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Slack*, 529 U.S. at 483–84, *see also Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017) ("To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.")

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find

it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*, *see also Dufresne*, 876 F.3d at 254.

"At the end of the day, 'the gate keeping functions of certificates of appealability [is to] separate the constitutional claims that merit the close attention of . . . this court from those claims that have little or no viability.' " *Dufresne*, 876 F.3d at 254 (quoting *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Here, this Court should deny Campos a COA on all of his claims. The claims simply "have little or no viability."

## RELIEF

For the reasons stated above, this Court should deny the petition.

The Court should also deny Campos any requested discovery,

evidentiary hearings, bond, oral argument, and any other relief he

seeks in this action, including a certificate of appealability.

Respectfully submitted,

Dana Nessel
Attorney General

<u>s/Scott R. Shimkus</u>

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
shimkuss@michigan.gov
P77546

Dated: March 29, 2019
2018-0233871-A\Answer\Campos.C

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

>HON. GORDON J. QUIST
>MAG. RAY KENT

and I hereby certify that Kari Edgecomb has mailed by United States Postal Service the papers to the following non-ECF participant:

>CHRISTOPHER CAMPOS, #868793
>MICHIGAN REFORMATORY
>1342 W. MAIN STREET
>IONIA, MI   48846

Respectfully submitted,

Dana Nessel
Attorney General

s/Scott R. Shimkus

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
shimkuss@michigan.gov
P77546