UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER CAMPOS,

                    Petitioner,              Case No. 1:18-cv-1096

v.                                           Honorable Gordon J. Quist

GREG SKIPPER,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Christopher Campos is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia County, Michigan.  On February 21, 2013, following a four-day jury trial in the Kent County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I).  On March 19, 2013, the court sentenced Petitioner to concurrent prison terms of 30 to 50 years.  The trial judge indicated that he imposed a 30-year minimum sentence, 5 years above the 25-year statutory mandatory minimum, in part to make up for the fact that he was ordering the sentences to be served concurrently rather than consecutively. Petitioner sought resentencing because the judge's premise—that the sentences could have been consecutive—was not correct.  The court ultimately agreed and reduced Petitioner's minimum sentence to 25 years.

On September 18, 2018, Petitioner, with the assistance of counsel, filed his habeas corpus petition raising five grounds for relief, as follows:

I.    There was insufficient evidence to convict of first degree criminal sexual conduct where there was no evidence of penetration.

II.      The court failed to properly ensure that defendant knowingly, voluntarily, and intelligently waived the right to testify.

III.     The prosecutor improperly relied on denigration of defense counsel with remarks about the upsetting nature of the cross-examination of the complainant and by adding to the complainant's testimony in closing.

IV.     Petitioner was prejudiced by ineffective assistance of [trial] counsel.

V.      Petitioner was prejudiced by ineffective assistance of appellate counsel.

(2nd Am. Pet., ECF No. 3, PageID.152, 154-156.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are procedurally defaulted or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds lack merit.[1] Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

The trial court described the underlying facts as follows:

> The charges arise from allegations that defendant sexually abused his niece, Anjelica.  Anjelica lived in Saginaw with her mother, Cecilia.  Anjelica's father lived in Grand Rapids with his parents and his brother, defendant.  Anjelica would sometimes stay with her father in Grand Rapids during time off from school, including the summers of 2010 and 2011.  It was alleged that defendant sexually abused Anjelica during this time.

---

[1] "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

The allegations came to light on February 23, 2012.  Cecilia was visiting her mother in the hospital and she received a call from her sister stating that Anjelica had revealed inappropriate conduct by defendant.  Cecilia returned home, asked Anjelica about what happened, and then called the police after Anjelica told her about defendant touching her.  Arrangements were eventually made through the Children's Advocacy Center in Saginaw, Michigan, for a forensic interview with Anjelica and a subsequent medical examination.  This led to a criminal prosecution and the February 2013 jury trial on two counts of first-degree criminal sexual conduct.

Anjelica was seven years old at the time of trial. At trial, she testified, "what [defendant] did is every time when my grandma was gone he would always take me to my grandma's room or his room and he would keep trying to do stuff to me." When asked about what kind of "stuff" defendant would do, she said that he "will try to put his middle part into me and every time I try to move he'll just take me back on his bed or on my grandma's bed."  Anjelica referred to and identified different "no-no spots" during her testimony.  She stated that defendant tried to put his "middle part" or "no-no spot" into her front and back no-no spots and it hurt when he did so.  She testified that defendant also would touch her front no-no spot with his tongue, and he tried to put his no-no spot in her mouth, but she would not let him. She demonstrated how defendant wanted her to touch his no-no spot with her hand and explained how she would try to pull away but defendant would not allow it.  She also described a "slime" that came out of defendant's no-no spot that was "like white mixed with a little yellow".

(Kent Cty. Cir. Ct. Op. and Order, ECF No. 9-12.)[2]

The jury heard testimony from officers who investigated the charges, an expert in forensic interviewing, the doctor who examined the victim, the victim's mother, and the victim. In addition to cross-examining those witnesses, Petitioner's counsel also called Petitioner's sister to the stand.  Petitioner opted to not testify.  The jury deliberated for about three hours before finding Petitioner guilty as charged.

Petitioner, with the assistance of counsel, filed a notice of appeal in the Michigan Court of Appeals.  Counsel also assisted Petitioner in seeking post-judgment relief in the trial court.  *See* (Mot. for New Trial, ECF No. 9-13, PageID.535-571; Mot. for New Trial Hr'g Tr.,

---

[2] For the reasons set forth in § II, below, the undersigned will rely on the trial court's recitation of the facts and testimony as set forth in the court's opinion and order resolving Petitioner's motion for relief from judgment, unless otherwise expressly stated.

ECF No. 9-9.)  On November 14, 2013, the trial court denied Petitioner's motion for new trial; however, the court resentenced Petitioner as described above.

After the trial court denied relief, Petitioner filed his brief in the court of appeals, raising several issues, including three claims of ineffective assistance of trial counsel that are part of his present petition.  (Pet'r's Appeal Br., ECF No. 9-13, PageID.594-596.)  By unpublished opinion issued August 12, 2014, the trial court denied relief on Petitioner's appellate claims and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 9-13, PageID.529-533.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues he had raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 9-14, PageID.725-727.)  By order entered May 28, 2015, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 9-14, PageID.723.)

On August 16, 2016, Petitioner, with the assistance of new counsel—his present counsel—filed a motion for relief from judgment raising the same issues he raises in this petition, with the exception of the three ineffective assistance of trial counsel issues he had already raised on direct appeal.  By memorandum issued December 20, 2016, the trial court denied Petitioner's motion.  (Kent Cty. Cir. Ct. Op. and Order, ECF No. 9-12.)  Petitioner and his counsel then filed applications for leave to appeal the trial court's denial of Petitioner's motion in the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Court of Appeals denied leave by order entered December 21, 2017, "because defendant . . . failed to establish that the trial court erred in denying the motion for relief from judgment.  (Mich. Ct. App. Order, ECF No. 9-15, PageID.851.)  The Michigan Supreme Court denied leave by order entered September 12, 2018,

"because defendant . . . failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  (Mich. Order, ECF No. 9-16, PageID.927.)

Petitioner, still with the assistance of counsel, then timely filed his petition in this Court.  (Pet., ECF No. 1.)  He has amended his petition twice.  (1st Am. Pet., ECF No. 4; 2nd Am. Pet., ECF No. 5.)

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the

legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

The habeas statute indicates that "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The factual determinations that are presumed correct are those determinations made by "'the last state court to issue a reasoned opinion on the issue[s]' raised in a habeas petition."  *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016) (quoting *Joseph v. Coyle*, 469 F. 3d 441, 450 (6th Cir. 2006)).

The undersigned concludes that, for those issues raised in Petitioner's habeas petition that were raised below in his motion for relief from judgment, but not raised on direct appeal, the last state court to issue a reasoned opinion on those issues was the trial court in its December 20, 2016, opinion and order.  The court of appeals subsequent determination that Petitioner had failed to show the trial court had erred and the Michigan Supreme Court's subsequent determination that Petitioner had failed to establish entitlement to relief under MCR 6.508(D) are unexplained decisions that add nothing to the trial court's decision.  *See Guilmette v. Howes*, 624 F.3d 286, 289-292 (6th Cir. 2010) (court concluded that Michigan Supreme Court form orders denying relief citing 6.508(D) where Petitioner raises ineffective assistance of trial and appellate counsel claims are "ambiguous" and, thus, "unexplained").  Accordingly, the undersigned will defer to the factual determination of the trial court with regard to those issues.  With regard to the ineffective assistance of trial counsel claims based on failure to challenge the prosecutor's expert testimony and failure to challenge the "crying" juror, however, the undersigned will defer to the factual determinations of the court of appeals, the last state court to issue a reasoned opinion regarding those issues.

## III.   Sufficiency of the evidence

Petitioner argues that neither the testimony of the victim nor the physician nor the victim's mother provided any basis to show penetration.  Petitioner claims, therefore, that the

evidence was not sufficient to permit the jury to find beyond a reasonable doubt that he committed

CSC-I.

The trial court disagreed:

Defendant claims there was insufficient evidence to convict him of first-degree criminal sexual conduct for penile-anal or penile-vaginal penetration. According to defendant, the evidence only showed that he "tried" to achieve vaginal and anal penetration, but he was unsuccessful. He claims trial and appellate counsel were ineffective for failing to raise these arguments regarding sufficiency of the evidence.

When reviewing a claim of insufficient evidence, the evidence must be viewed in a light most favorable to the prosecution. *People v Hardiman*, 466 Mich 417, 421 (2002). The question is then "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id*.

Defendant was convicted of two counts of first-degree criminal sexual conduct based on "sexual penetration". See MCL 750.520b(l). "Sexual penetration" is specifically defined by statute to mean "sexual intercourse, *cunnilingus*, fellatio, anal intercourse, or any other intrusion, *however slight*, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r) (emphasis added).

In this case, as an initial matter, defendant does not raise arguments related to Count 2, which was for cunnilingus. It appears defendant is operating under the mistaken belief that Count 1 was for penile-anal penetration and Count 2 was for penile-vaginal penetration. However, as mentioned above, Count 1 was for penile-anal and/or penile-vaginal penetration, while Count 2 was for cunnilingus. Anjelica's testimony regarding defendant touching her front no-no spot with his tongue was plainly sufficient to allow a conviction based on cunnilingus in Count 2. *See People v Legg*, 197 Mich App 131 (1992).

As for Count 1, at trial, Anjelica described defendant trying to put his no-no spot in her front and back no-no spots. She stated that it hurt when he did this, and when asked further about it hurting, she responded, "Yeah, because he was trying to and it went-he tried to, and he actually got it back and then it hurt. And so I hurry up and ran and I went downstairs." Making reasonable inferences from the testimony regarding defendant's actions and Anjelica's pain, a rational factfinder could find beyond a reasonable doubt that penetration of genital or anal openings, however slight, occurred. *See also People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued Sept. 22, 2011 (Docket No. 298183) (finding testimony adequate to establish penetration when the victim "indicated that defendant was attempting to put his penis in her vagina, but it was not going in '[a]nd that hurt'").

> Accordingly, there is sufficient evidence supporting the convictions on both counts. Trial counsel was not ineffective for failing to raise issues related to sufficiency of the evidence because such efforts would have been futile.  *See People v Ericksen*, 288 Mich App 192, 201 (2010).

(Kent Cty. Cir. Ct. Op. and Order, ECF No. 9-12, PageID.526-527.)

The standard applied by the trial court was entirely consistent with the standard applied to sufficiency-of-the-evidence claims under clearly established federal law.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d

652, 656 (6th Cir. 2008).[3]  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

   With respect to the charged vaginal or anal penetration, Petitioner argues that the evidence showed that Petitioner "tried to achieve entry" but that the jury could only speculate that there had actually been entry.  Petitioner seems to ignore the trial court's reliance on the victim's testimony that "he was trying to (achieve entry to the victim's anus and vagina) and it went—he tried to and he actually got it back and then it hurt."  The trial court concluded that it was reasonable to infer from the attempt and the resulting pain that Petitioner had penetrated the victim's vagina and anus.

   *Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts.  443 U.S. at 319.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'"  *Id*. at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  Certainly, the inference identified by trial court—that, based on the facts identified, Petitioner penetrated the victim's vagina and anus when he attempted to do just that and caused her pain—rationally flows from the underlying facts.  The inference is not compelled by those facts.  The inference may not even be more likely than not.  It is simply rational.  *Id*. at 656.  To succeed in his challenge, Petitioner must show that the identified inference is irrational.  He has not.  Instead, his argument depends on ignoring the victim's testimony regarding the physical pain caused by Petitioner's attempt.

---

[3] Deference is properly accorded to the court that considered the trier-of-fact's verdict in the last reasoned state court opinion.  Though typically that is the Michigan Court of Appeals, in Petitioner's case, it is the trial court.

Petitioner has failed to show that the facts identified by the trial court—that Petitioner attempted penetration and caused pain—are not reasonably supported by the record. He has also failed to show that the inference the trial court identified as supporting the conviction is not rational. Therefore, Petitioner has failed to show that the trial court's rejection of his sufficiency challenge regarding vaginal and anal penetration is contrary to, or an unreasonable application of, *Jackson*, the clearly established federal law regarding sufficiency. Accordingly, he is not entitled to habeas relief on that claim.

Petitioner's sufficiency challenge to his CSC-I conviction based on cunnilingus fares no better; but, it fails for a different reason. The trial court noted that cunnilingus is "sexual penetration" and that, under state law, Anjelica's testimony that defendant touched her front no-no spot with his tongue was plainly sufficient to demonstrate cunnilingus under the statute. The trial court cited *People v. Legg*, 494 N.W.2d 797 (Mich. Ct. App. 1992), for the definition of cunnilingus and the evidence necessary to meet the requirements of the definition:

> An act of cunnilingus, by definition, involves an act of sexual penetration. M.C.L. § 750.520a(l); *People v. Harris*, 158 Mich App 463, 470, 404 NW2d 779 (1987). See also *People v. Sommerville*, 100 Mich App 470, 480–481, 299 NW2d 387 (1980) (oral sex acts are included in the definition of sexual penetration because they are "as offensive to the victim and to society as is forcible penetration").
>
> The *Harris* Court, after reviewing several dictionary definitions of "cunnilingus," concluded that "it is evident that cunnilingus requires the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself [sic], or the mons pubes [sic]." 158 Mich App at 470, 404 NW2d 779. The complainant said that defendant touched "[t]he part [of her body] that I go to the bathroom with" with his mouth. This testimony supported the verdict. Defendant's touching with his mouth of the urethral opening, vaginal opening, or labia establish cunnilingus. The labia are included in the "genital openings" of the female; see *People v. Bristol*, 115 Mich App 236, 238, 320 NW2d 229 (1981). Sufficient evidence supported the verdict.

*Legg*, 494 N.W.2d at 798.

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  Petitioner does not dispute that the victim testified as stated by the trial court.  Moreover, he cannot challenge on habeas review that the State of Michigan deems that conduct to constitute cunnilingus or that the State of Michigan defines cunnilingus to be CSC-I.  Therefore, Petitioner has failed to show that the state court's rejection of his sufficiency challenge regarding the cunnilingus CSC-I count to be contrary to, or an unreasonable application of, clearly established federal law.

## IV.    Waiver of the right to testify

Petitioner contests the propriety of his "silent" waiver of the right to testify because the record does not show that the trial court informed Petitioner "that he had a constitutional right to testify, and that the right belonged to him personally, not to the attorney."  (2nd Am. Pet. Br., ECF No. 5, PageID.183.)  Petitioner suggests it is clearly established federal law that: (1) he cannot waive his right to testify unless the knowing and voluntary waiver of that right is apparent, on the record, from the court's questions and advice; and (2) violation of his right to testify is so fundamental that it is not properly subject to harmless error analysis.  Both suggestions are entirely meritless.

Petitioner did not testify at his trial.  After the prosecution and the defense rested, and after the jury had been excused for the day, the following exchange occurred:

| Petitioner's counsel: | Your Honor—and I'm just putting this on the record right now.  It was my client's decision not to testify today.  I just wanted to—isn't that correct Christopher? |
| Petitioner: | Yes. |
| The Court: | What was your answer, sir? |
| Petitioner: | Yes. |
| The Court: | All right, thank you. |
| Petitioner's counsel: | So, I just want[ed] to put that on the record.  It's part of the strategy in the case. |
| The Court: | All right, thank you. |

(Trial Tr. IV, ECF No. 9-6, PageID.419.)

The trial court concluded it was not required to make a record of Petitioner's waiver of the right to testify and that the record adequately demonstrated the waiver anyway:

"[T]here is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify."  *People v Harris*, 190 Mich App 652, 661 (1991). Michigan trial courts have no duty to advise defendants of that right or to determine whether a knowing and intelligent waiver of that right was made.  *Id.* at 661-662. Furthermore, despite the lack of any requirement of a record of waiver, the record in this case includes statements from trial counsel and defendant confirming that it was defendant's choice not to testify and that choice was made as a part of trial strategy.

Respectfully, defendant's arguments related to waiver of his right to testify lack merit and do not provide any basis for relief.

(Kent Cty. Cir. Ct. Op. and Order, ECF No. 9-12, PageID.527.)

Petitioner contends that the trial court's reliance on *Harris* is misplaced because *Harris* was effectively overruled by the United States Supreme Court in *Iowa v. Tovar*, 521 U.S. 77, 88 (2004).  (Br. in Supp. of 2nd Am. Pet., ECF No. 5, PageID.193-188.)  *Iowa v. Tovar*, however, is not a case about waiver of the right to testify.  Indeed, other than *Rock v. Arkansas*, 483 U.S. 44 (1987), which firmly established the right to testify as a constitutional right, none of the Supreme Court authority cited by Petitioner speaks to the right to testify.  Essentially, Petitioner

invites the Court to extend the waiver jurisprudence developed with respect to other rights to the right to testify.  Generally, there is nothing wrong with an argument based on a good faith extension of existing law; but, when seeking relief under 28 U.S.C. § 2254, such an argument is a clear indication that Petitioner has strayed outside of clearly established federal law to support his position.

Petitioner also supports his argument with citations to *United States v. Teague*, 908 F.2d 752 (11th Cir. 1990); *Alicea v. Gannon*, 675 F.2d 913 (7th Cir. 1982); and *United States v. Curtis*, 742 F.2d 1070 (7th Cir. 1984).  The *Teague* decision relied upon by Petitioner was vacated. *United States v. Teague*, 932 F.2d 889 (11th Cir. 1991).  The *en banc* opinion that replaced the panel opinion retained much of the reasoning of the panel opinion; however, it did not keep the language that is critical to Petitioner's argument.  *United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992).  *Alicea*, a pre-*Rock* case, was not about waiver at all.  *Curtis*, also a pre-*Rock* case, related to waiver, but only to the extent it concluded that a defendant's right to testify was personal, and could not be waived by counsel.  The idea that the right to testify is personal is beyond dispute; but, that does not demonstrate that the state court's resolution of this issue is contrary to federal law, clearly established federal law or otherwise, because the trial court specifically found that Petitioner personally waived his right to testify.

The fact that Petitioner's authority is not helpful to this Court's habeas analysis does not mean there is no authority that is relevant.  In *United States v. Webber*, 208 F. 3d 545 (6th Cir. 2000), the Sixth Circuit explained exactly how far a trial court was required to go to establish waiver of the right to testify:

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.  *Joelson*, 7 F.3d at 177.  This is so because the defendant's attorney is presumed to follow the professional rules of conduct [footnote omitted] and is

"strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984). Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record. *Joelson*, 7 F.3d at 177. *See also United States v. Ortiz*, 82 F.3d 1066, 1069 n. 8 (D.C.Cir.1996) (noting the agreement of the First, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits that the trial court does not have a duty to *sua sponte* conduct an on-the-record colloquy regarding waiver); *Knox v. Morris*, 908 F.2d 973 (table), 1990 WL 106789, at *1 (6th Cir. July 30, 1990) (holding that trial court has no duty to establish waiver on record); *United States v. Yarbrough*, 896 F.2d 554 (table), 1990 WL 17263, at *2 (6th Cir. Feb. 27, 1990) (same).

*Webber*, 208 F.3d at 551; *see also Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009); *United States v. Smith*, 706 F. App'x 241, 251-252 (6th Cir. 2017). Petitioner does not identify any binding or persuasive authority contrary to *Webber*.

Petitioner accurately describes the right to testify as "fundamental" and "personal"; but then he seems to conflate those terms with the idea that the right to testify is structural. It is not. *See Solomon v. Curtis*, 21 F. App'x 360, 362-363 (6th Cir. 2001) (court concluded that the violation of the right to testify was not structural, but was subject to harmless error analysis); *White v. Steele*, 629 F. App'x 690 (6th Cir. 2015) (court concluded violation of the right to testify was subject to harmless error analysis); *Gray v. Wolfenbarger*, 501 F. App'x 427, 430 (6th Cir. 2012) (same). Violation of a Petitioner's right to testify is subject to harmless error analysis.

For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining

15

the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht*, 507 at 637 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

Petitioner has failed to identify any prejudice from the violation he alleges.  In evaluating prejudice, it is important to keep in mind that Petitioner does not make any of the following claims: that he wanted to testify; that counsel failed to inform him regarding his right to testify or the pros and cons of testifying; or that he was unaware of his right to testify or the pros and cons of testifying.  Instead, he objects only because the trial court did not inform him of his right to testify.  Under the circumstances here, where there is no record evidence that Petitioner was not aware of his rights and where he personally waived those rights on the record, the undersigned concludes that Petitioner has failed to show prejudice such that error, if any, was harmless under *Brecht*.

## V.     Prosecutorial misconduct

Petitioner identifies two specific instances of misconduct during the prosecutor's closing argument.  First, Petitioner complains that the prosecutor referred to defense counsel's questioning of the victim as "upsetting."  Petitioner raised this issue in his motion for relief from judgment, but the trial court refused to consider it because the trial court concluded Petitioner had raised it on direct appeal and the issue had been decided against him.

Petitioner, inexplicably, argues that the prosecutor's description of defense counsel's cross-examination of the victim as "upsetting" was not raised in the direct appeal. Petitioner's appeal brief, however, reads as follows:

16

During her closing argument, the prosecutor repeatedly described defense counsel's cross-examination of Angelica as "manipulative" stating[,]

> "when she was questioned on cross-examination, she was manipulated, a seven year old was manipulated and misled, multiple times, multiple times, into agreeing to things throughout that cross-examination.
>
> Example. Again, there's a forensic protocol for a reason. There's a reason why the law and the court rules say I have to ask direct, non-leading questions so that you can get to the truth, and the truth is justice. So when she is asked were you ever home alone with Uncle Chris? Well, yeah. You know, we can go through those series of questions again.
>
> However, on cross-examination it was in a very sweet and manipulative voice. So, there were always grownups at the house with you and Uncle Chris? Well, yeah. And it would go back and forth, and he would do it over and over again."

TT N, p. 13. The prosecutor continued:

> ***"and I want to encourage you----I'm not going to go into it at length because it is upsetting to discuss and to watch what that cross-examination of that seven year old involved . . ."***

TT N, p. 18. She persisted in her rebuttal summation:

> "you're right, we do have two different jobs, and we obviously do our jobs very differently. I stand by my comments and statements that his cross-examination of that seven year old was manipulative. Why was he so defensive about it? Why? You saw it. Sorry, I thought it was an hour. It seemed like an hour. It was only 45 minutes, but you saw it. And ask yourself, was that an effort at the truth? It was not."

TT N, p. 50.

(Pet'r's Appeal Br., ECF No. 9-13, PageID.553) (emphasis added). Petitioner argued that the prosecutor, through these excerpts, was urging the jury to conclude that counsel was intentionally trying to mislead the jury. (*Id*., PageID.554-557.) The emphasized language is the same language Petitioner relied on to raise the issue again in his motion for relief from judgment.

Even though Petitioner specifically mentioned the prosecutor's description of defense counsel's manipulative cross-examination as "upsetting" in the appeal brief, Petitioner now asks this Court to conclude that Petitioner did not challenge the prosecutor's reference to

17

"upsetting" in the direct appeal.  The undersigned concludes that Petitioner's request is absurd. Petitioner clearly raised this issue on direct appeal and the trial court properly refused to revisit it because it had already been decided against Petitioner.

But, that does not end the habeas analysis.  It simply shifts the state court decision to which this Court must defer.  The trial court's decision on Petitioner motion for relief from judgment is not the "last reasoned opinion" on the "upsetting" argument issue, the court of appeals decision is.  Critically, the court of appeals agreed with Petitioner that the argument was inappropriate.  The court concluded further, however, that the misconduct did not warrant relief:

> The prosecutor's argument that defense counsel manipulated the victim's testimony during cross-examination, and would have manipulated the victim's younger brother had he testified, exceeded the bounds of proper argument because it suggested that defense counsel was intentionally attempting to mislead the jury, *Unger*, 278 Mich App at 236, by focusing on defense counsel's cross-examination technique as related to the victim, rather than the actual evidence presented at trial. Further, the argument also impermissibly shifted the focus from the evidence to defense counsel's personality and tactics.  *Wise*, 134 Mich App at 101-102. However, while the prosecutor's comments exceeded the bounds of proper argument, reversal of this unpreserved issue is not required because defense counsel did not object and a curative instruction could have alleviated any prejudicial effect of the prosecutor's improper comments.  *Unger*, 278 Mich App at 236.  In addition, the jury was instructed after closing arguments that the lawyers' statements and arguments were not evidence and were only meant to help the jury understand the evidence and each side's legal theories.  Moreover, we note that defense counsel addressed the prosecutor's arguments in his closing argument and attempted to turn them to his advantage.  A defendant is not allowed to assign error on appeal to something his own counsel deemed proper at trial.  *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998).

(Mich. Ct. App. Op., ECF No. 9-13, PageID.533.)

For Petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, he must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability

18

of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

The state appellate court concluded that the misconduct of which Petitioner complained did not render Petitioner's trial "unfair."  The appellate court looked to Petitioner's counsel's own argument and determined that, not only did counsel not object, he attempted to turn the prosecutor's "manipulation" argument against her.  Petitioner does not challenge that characterization of the record.  Moreover, even absent that objection, the appellate court noted that the trial court after closing arguments specifically instructed the jury that the lawyers' arguments and statements were not evidence.[4]

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order

---

[4] Additionally, the closings were sufficiently rancorous that the trial court offered the same instruction *during* the closing arguments—twice.  (Trial Tr. IV, ECF No. 9-7, PageID.432, 434.)

to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Although the court of appeals relied on state authorities for its determination that Petitioner's trial was not unfair, its analysis and determinations are entirely consistent with the clearly established federal law regarding prosecutorial misconduct claims.  Petitioner has failed to show that the state appellate court's factual or legal determinations are unreasonable or contrary to clearly established federal law, much less that they are wrong "beyond any possibility for fairminded disagreement."  Therefore, he is not entitled to habeas relief on this claim.

Petitioner's second prosecutorial misconduct challenge arises out of the following prosecutorial statement during closing argument:

> But ladies and gentlemen, I'm going to tell you something, that the law says any entry no matter how slight is enough.  He does not have to have full, forceful entry into her for it to be considered penetration.  And ladies and gentlemen, he is a large, full-grown male, you saw that little girl.  It hurt; ***he got it in***.  Maybe only a little bit, but that satisfies the legal definition of penetration.

(Trial Tr. IV, ECF No. 9-7, PageID.427) (emphasis supplied).  The bolded and italicized text is the language Petitioner finds objectionable.  He argues that in making that statement, the prosecutor argued facts that were not in evidence.

The trial court addressed Petitioner's claim in resolving the motion for relief from judgment:

> Defendant also suggests that the prosecutor improperly expanded Anjelica's testimony by claiming during closing arguments that there was sexual penetration.  However, as explained above, reasonable inferences from Anjelica's testimony allow the conclusion that there was penetration sufficient to meet the definition

20

under Michigan law.  The prosecutor's arguments were proper and, in any event, the jury was instructed that the statements of the attorneys are not evidence.

(Kent Cty. Cir. Ct. Op. and Order, ECF No. 9-12, PageID.528.)

A prosecutor is not limited to simply recounting the evidence during closing argument.  He may also argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *see also Young*, 470 U.S. at 8 n.5 (Court acknowledged as a useful guideline the American Bar Association Standard:  "The prosecutor may argue all reasonable inferences from the evidence.").  Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).

Petitioner's argument on this point depends on his conclusion that there was not sufficient evidence to allow anything other than sheer speculation that penetration occurred.  (2nd Am. Pet. Br., ECF No. 5, PageID.192-195.)  For the reasons set forth in § III, above, penetration is a reasonable inference from the victim's testimony.  Accordingly, the trial court's determination that the prosecutor's argument is proper is well-supported by the record and entirely consistent with clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VI.    Ineffective assistance of appellate counsel

Petitioner contends that appellate counsel rendered ineffective assistance because he failed to raise the issues that Petitioner raised in his motion for relief from judgment.  The trial court concluded the issues were either meritless or had, in fact, been raised on appeal.  (Kent Cty. Cir. Ct. Op. and Order, ECF No. 9-12.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a

21

claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not

22

presented "was clearly stronger than issues that counsel did present."  *Id.*   Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

As set forth above, Petitioner's claims regarding sufficiency of the evidence, waiver of the right to testify, and prosecutorial misconduct relating to the argument that Petitioner "got it in," are without merit.  Accordingly, Petitioner's appellate counsel cannot be considered ineffective for failing to raise them.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner's other prosecutorial misconduct argument—that the prosecutor committed misconduct when she referred to him as manipulative and his questioning as

23

upsetting—was raised by appellate counsel.  The court of appeals even agreed that the prosecutor's conduct was inappropriate.  Accordingly, Petitioner cannot fault his appellate counsel for failing to raise the argument.

That leaves only Petitioner's ineffective assistance of trial counsel claims.  Those claims are discussed in greater detail below; however, of the five claims, Petitioner's appellate counsel raised three of them on direct appeal.  Therefore, those ineffective assistance of trial counsel claims cannot serve as the foundation for a claim that appellate counsel was ineffective. The fourth claim, regarding trial counsel's failure to challenge sufficiency, and the fifth claim regarding trial counsel's failure to object to the prosecutor's argument that Petitioner "got it in," both fail for the reasons set forth in § III, above.  There was sufficient evidence to support a reasonable inference that Petitioner penetrated the victim's vagina and anus.  Accordingly, Petitioner has failed to show that the trial court's rejection of his ineffective assistance of appellate counsel claims is contrary to, or an unreasonable application of, clearly established federal law.

## VII.    Ineffective assistance of trial counsel

Petitioner argues that his trial counsel rendered ineffective assistance because he failed to move to quash the first-degree charges because there was no evidence of penetration; he failed to object to the prosecutor's improper closing argument, as identified in § V, above; he failed to object to the testimony of the prosecutor's expert; and counsel failed to remove a juror who was crying after *voir dire*.  Many of these arguments have already been addressed above.

Because there was sufficient evidence of penetration based on the victim's testimony, Petitioner's trial counsel was not ineffective for failing to move to quash the CSC-I charges.  For the same reason, he was not ineffective for failing to object to the prosecutor's argument that Petitioner "got it in."  And, because the trial court provided curative instructions regarding the improper prosecutorial arguments—and because jurors are presumed to follow their

24

instructions, *see, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000)—Petitioner cannot show that trial counsel's failure to object to the prosecutor's comments about defense counsel's manipulative and upsetting cross-examination resulted in any prejudice.  The state courts' rejection of those claims is, therefore, neither contrary to, nor an unreasonable application of clearly established federal law.  The claims regarding the expert and the juror are discussed below.

### A.    Expert testimony

The prosecutor offered the testimony of Bonnie Skornia as an expert regarding the typical and relevant symptoms of child sexual abuse.  During her redirect examination, however, Ms. Skornia was asked what she looked for as a forensic examiner and medical professional to identify false allegations.  (Trial Tr. II, ECF No. 9-5, PageID.372.)  Ms. Skornia explained that she looks for details and emotions, but then went on to opine regarding the specific information that the victim provided:

> This child gave me—even if they're thinking that mom instilled it, this child gave me "he tried to put it in my front no-no but he wiggled it around and it hurt and he couldn't do it."  That kind of a bit much for someone who had instilled it.  She did say it hurt.  So I always am listening for victim statements, for details, to see if it truly happened or not.

(*Id.*)  The prosecutor then asked a follow up question whether Skornia suspected that this victim's allegations were "false or instilled."  (*Id.*)  Defense counsel objected.  The court agreed and instructed the jury as follows:

> Ultimately, ladies and gentlemen, what I will tell you is an expert witness is not here to tell you whether something is true.  You're the ones that have to decide this case.  You're the ones that have to decide whether the allegations are true or not.  And the expert here is to give you testimony about what they're experts on and give you—testify in the way that she has here today.  Whether she believes the allegations are true or not, it's really nor for her to tell you that; it's for you to make that determination whatever her opinion may be.  If she believes something is false, if she believes something is true, as I said earlier, that's not—you're the triers of fact here; not me, not the attorneys, and not the expert witness.  You're the ones that have to make that ultimate determination.

I think you're kind of close to that. I'm a little concerned about it.

(*Id*.) Counsel withdrew the question.

The court of appeals addressed Petitioner's challenge to counsel's failure to object to Skornia's initial answer as follows:

> To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); *People v Pickens*, 446 Mich 298, 309, 338; 521 NW2d 797 (1994).

> Defendant first claims that he was denied effective assistance when defense counsel failed to immediately object to expert witness Bonnie Skornia's testimony on redirect examination that the victim's statements during the medical examination were a "bit much" to have been instilled in the victim. Defendant argues that Skornia's testimony improperly vouched for the victim's testimony and counsel should have objected.

> In a criminal sexual conduct case, an expert testifying regarding behaviors common in other abuse victims (1) may not testify that the sexual abuse occurred, (2) may not vouch for the veracity of a victim, and (3) may not testify whether the defendant is guilty. *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995). However, "(1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353.

> Skornia improperly vouched for the truthfulness of the victim when she testified that the victim's statements, that defendant tried to put "it" in her "front no-no," but it hurt and defendant could not do it, were "a bit much" for the statements to have been instilled by her mother. *Id*. at 352. We agree that trial counsel should have immediately objected, *id*., but we conclude that reversal is not required because defendant is unable to prove that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 US 687-688, 694; *Trakhtenberg*, 493 Mich at 51. Defense counsel objected after the prosecutor's immediate follow-up question. At that time, the trial court gave a curative instruction, making it clear that the jury was the trier of fact, not Skornia. Following the close of evidence, the trial court also instructed the jury that it was the finder of fact and that it was the jury's job to decide which witnesses to believe.

> In addition, the jury was instructed that it did not have to believe an expert's opinion. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Thus, defendant is unable to prove that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 US 687-688, 694; *Trakhtenberg*, 493 Mich at 51.

(Mich. Ct. App. Op., ECF No. 9-13, PageID.529-530.)

Petitioner indicates his disagreement with the appellate court's resolution of the claim; but, he does not explain how the court's determinations are contrary to, or an unreasonable application of *Strickland*, the clearly established federal law upon which the court of appeals expressly relied. The question posed by the prosecutor was not objectionable, and counsel objected immediately after the objectionable answer was provided. The trial court immediately explained to the jurors their roles and the expert's role. Petitioner does not identify any fault in the trial court's explanation. Instead, he complains that he is entitled to relief because the answer was objectionable. Petitioner has not shown the requisite prejudice in light of the court's immediate curative instruction. Because Petitioner has failed to show that the state court's determination is contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to habeas relief.

### B.    The crying juror

Finally, Petitioner complains that counsel did not do enough to address a juror who cried after the jury was chosen. After *voir dire* was complete and the jury had been chosen, Petitioner's counsel brought an issue to the attention of the court:

| | |
|---|---|
| THE COURT: | Anything else, Ms. Janiskee? |
| MS. JANISKEE: | No. |
| THE COURT: | Mr, Nunzio? |
| MR. NUNZIO: | I do, your Honor. Judge, counsel based his decision I guess in part on the last juror, number 29, is it [Juror B] |

27

THE COURT:          [Juror B].

MS, JANISKEE:       It's [Juror B].

MR. NUNZIO:         [Juror B], excuse me.  She seemed to be perky, up front.  I thought her candor was quite frankly open and honest.  And as soon as we had selected the jury she started breaking down in front of the courtroom.  I witnessed her crying, take out a Kleenex.  And I guess with caution, I guess, is the better way to take this so counsel doesn't have to move for a mistrial if she continues to cry throughout the proceedings.  Maybe it's emotional because she, in fact, had a sister that was abused, not reported, though.  But I thought her answers lended itself to her being somewhat unbiased, and that's obviously why counsel made a decision to keep her.  But now that she's openly crying, I don't know if that's going to infect or do anything with the jury pool back in private or during the course of the trial.  Now, I understand that testimony is -- it can be emotional where jurors cry, but we haven't even started taking testimony yet.  So I certainly would look to the Court to see if the Court had observed anything of this behavior so that the record's clear, because I may have to make a motion to strike.  Now, obviously it's early.  Maybe we will have a better gauge of this tomorrow, but I certainly am somewhat cautionary regarding her being a prospective juror in light of her emotional response without even any testimony being taken.

THE COURT:          Ms. Janiskee?

MS, JANISKEE:       I mean, I think it's -- I did make the same observations.

THE COURT:          I observed that she was dabbing her eyes with a Kleenex.  It wasn't a loud crying-type thing, but I did observe that.

MS. JANISKEE:       However, I guess my personal opinion is I think it's a little premature.  Maybe she's frustrated because now she has to make arrangements for her children in the morning or whatever, transportation.  I don't know what her frustration is, so at this point I guess my position is I did make the observations, but I think it is extremely premature to make any type of judgment or determination if there is, in fact, something that needs to be done about it.

THE COURT:          What I may do here is tomorrow morning when they come in, I may with both of you just pull her aside in chambers to explore it very briefly to see -- I guess that would be my

inclination, just to get some reference.  I mean, the fact that she was dabbing her eyes doesn't mean she can't be a fair juror for any number of reasons, even related to her sister, but where she could still be a fair and impartial juror here. But I think in fairness probably we could inquire into it tomorrow morning with the two of you present might be appropriate.  Do you have any problem with that?

MR. NUNZIO:        No objection, your Honor.

MS. JANISKEE:        No.

THE COURT:        Why don't we plan on that in case there is an issue.  Hold on a minute.  Let's see what this has to do --is she still here?

(At 12:49 p.m., Court confers with Clerk)

All right.  The juror we were talking about, I've got a note here from my clerk that she doesn't want to hear this kind of case.  We're going to talk to her tomorrow morning.  She's still back here, so I suggest that the two of us go back and talk to her right now and decide what to do.  If worse comes to worse, we'll go with 13 jurors rather than 14.  But let's go back and chat with her.  Is that all right with you, Ms. Janiskee?

MS. JANISKEE:        That's fine.

MR. NUNZIO,        Does the Court want to do it on the record with the court reporter in that we're talking to a prospective juror who's been selected?  I have no objection either way.  I'm just wondering whether or not it should be recorded.

THE COURT:        Well - -

MR. NUNZIO:        Because ultimately, your Honor, the question that's going to be asked of her is whether or not she can be biased or unbiased, and if it's on the record there would be grounds for at least a request for cause at that point in time.

THE COURT:        Well, I think at some point we may put it -- if there's an issue we can put it on the record.  But if there

MR. NUNZIO:        Okay.  I have no objection either way.

THE COURT:        If we all agree that there's not, and I don't know that it has to be -- but certainly if we do something that requires us to go on the record and frankly to question her on the record,

that's fine.  But I think given her reaction here, to bring her into the open courtroom with a lot of people still here might not be the best way to address it.

MR. NUNZIO:   No objection, your Honor.

MS. JANISKEE:  No problem.

THE COURT:   Okay?  Do you have any problem with that, Ms. Janiskee?

MS. JANISKEE:  No.

THE COURT:   All right. Let's go back and chat.

(Trial Tr. I, ECF No. 9-4, PageID.332-333.)

The next day, the court reviewed the parties' resolution of the issue:

THE COURT:   Now, we have a couple other issues.  Yesterday the last juror chosen in Seat Number 12, [Juror B], after the other potential jurors who were dismissed from the courtroom and before sending the jurors back to the jury room here, it was noted that one of the jurors was weeping a little bit, dabbing her eyes with some Kleenex.  So, I think the three of us did note that.  It wasn't crying, loud wailing or anything like that, but it was enough to cause us to want to think about it, and Mr. Nunzio made mention of it yesterday afternoon.

After the other jurors were released and with the agreement of both counsel, the three of us, the defense attorney, prosecutor and I met with that particular juror in my chambers to just basically inquire about the situation.  And I'm going to just try to briefly explain my understanding of what she said.  If counsel has any disagreement with that certainly let me know.

But essentially she said that she was a little surprised she was kept on the jury.   And she understands fully that the defendant is innocent until proven guilty, and what the jury has to decide is whether the defendant is guilty of the crimes with which he's been charged or not, and that her -- she understands that and fully appreciates that, has no problem with that.

Her emotions had to do with the fact that a young child, even if the allegations are not true, has to go through this type of a process.  She has four children of her own, and she was just kind of emotionally concerned about a young child.

She seemed to make clear to me that -- and while we sent the juror back to the jury room and we talked, the three of us, about whether to let her go or not, and my impression, pretty clear impression of her comments is it really had nothing to do with whether the defendant was guilty or not.  She had an open mind.  She knew what her job as a juror would be there. It was strictly the emotions of a young child, whether the allegations are true or not true, accurate or not accurate, having to go through this process.  And that's what was causing her to tear up a little bit.  And she was embarrassed by the fact that it happened. She felt bad about it.

And after we let the juror go back to the jury room I talked with counsel, and for a variety of reasons we thought the most -- the best thing to do was to have her come back this morning, which we did.  Counsel and I again met with the juror just to ask how she was doing.  She said she was doing fine.  She was embarrassed about yesterday.  She understood what her role as a juror is, and that she seemed to be okay.

And I asked her if she had talked to any of the jurors about it and what their reaction was.  She said it was very little. When she came in this morning one of the jurors said, well, I'm glad you came in, and that's about the extent of the conversation with the jurors.  She indicated she didn't even indicate why she was crying, as I recall.  I think that's a fair statement.

I also indicated when I talked to counsel, I think we agreed that for the time being we'll keep her on the jury, especially with the weather being what it is and all that.  We've got 14. I told her if she feels any sense of any, strong emotions coming on at any point during the trial to simply raise her hand and we'll take a break and we'll separate her from the other jurors and we'll decide then whether we want to handle this differently.

Have I summarized that accurately, Ms. Janiskee?

MS. JANISKEE:        Yes, your Honor.

THE COURT:          You also, Mr. Nunzio?

MR. NUNZIO:         Your Honor, counsel concurs with the court's summarization.  Forgive me for not getting up all the way, your Honor.

THE COURT:          No, that's all right.

| MR. NUNZIO: | And I concur we have no objection to the Court's instruction of the juror with respect to her emotional state and to let the Court know. |
|---|---|
| TIIE COURT: | Do you have any problem procedurally with how I handled this, Mr. Nunzio? |
| MR. NUNZIO: | I do not, your Honor.  I think in light of the circumstances, I think the Court handled it very appropriately. |
| THE COURT: | Ms. Janiskee, do you? |
| MS. JANISKEE: | No, I have no objection to the way it was handled. |

(Trial Tr. II, ECF No. 9-5, PageID.337-338.)

Petitioner complains that "[d]efense counsel . . . failed to remove a prospective juror who began crying before any witness was sworn, or even question the juror about why she was crying."  (2nd Am. Pet. Br., ECF No. 5, PageID.198.)  The court of appeals rejected that complaint as meritless:

"[A]n attorney's decisions relating to the selection of jurors generally involves matters of trial strategy, which [courts] normally decline to evaluate with the benefit of hindsight."  *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (citations omitted).  It is presumed that jurors are competent and impartial and the party alleging the disqualification bears the burden of proving its existence.  *People v Collins*, 166 Mich 4, 9; 131 NW 78 (1911); *People v Walker*, 162 Mich App 60, 63; 412 NW2d 244 (1987).  This Court has previously noted:

Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions.  However, as a reviewing court, "we cannot see the jurors or listen to their answers to *voir dire* questions."  For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror.  [*People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (citations omitted).]

Defendant was not denied the effective of assistance of counsel related to juror B.  The trial court thoroughly questioned juror B about her emotions after she was seen crying in the courtroom shortly after the jury was chosen.  The juror indicated her concern for the victim having to testify, regardless of whether the allegations were true or not.  The juror also indicated that she did not believe sexual abuse occurred simply because it was reported and indicated that she could be fair and impartial.  *Johnson*, 245 Mich App at 259.  Moreover, we will not review defense counsel's

decision to not challenge juror B with the benefit of hindsight because it was a strategic decision. *Id*. at 259. The trial court was able to view juror B's facial expressions, body language, and manner when answering questions, *Unger*, 278 Mich App at 258, and the trial court did not clearly err by impliedly finding that juror B's statement that she could be fair and impartial was believable, *Johnson*, 293 Mich App at 90. Moreover, the record does not disclose any further issues with the juror during the proceedings. Thus, defense counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms and there is no evidence that but for juror B's inclusion on the jury, the outcome of the trial would have been different.

(Mich. Ct. App. Op., ECF No. 9-13, PageID.531.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ." U.S. Const. amend. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "The *voir dire* is designed "'to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).

When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed.'" *Dennis*, 354 F.3d at 520 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). The Michigan Court of Appeals answered that question in the affirmative: "The trial court was able to view juror B's facial expressions, body language, and manner when answering questions, [citation omitted], and the trial court did not

clearly err by impliedly finding that juror B's statement that she could be fair and impartial was believable, [citation omitted]."  (Mich. Ct. App. Op., ECF No. 9-13, PageID.531.)

Petitioner does not challenge the determination that Juror B's protestation of impartiality was credible.  Instead, he contends that counsel should have done more.  But, clearly established federal law does not require anything more.  Petitioner has failed to show that the court of appeals' determination that counsel's performance was professionally reasonable is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner has also failed to show that the court's conclusion that Petitioner suffered no prejudice is contrary to, or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  May 15, 2020                                  /s/ Ray Kent
                                                      United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).